Good morning, Your Honors. May it please the Court. I'm Robert Jobe, and I'm appearing today on behalf of the Petitioner Narinder Paul Singh. In this case, the Board made what I considered three fundamental errors. Mr. Jobe, before we get too far into these cases, I have confessed that it's unusual, but I'm concerned. We've got four cases here, the three Singhs and Mr. Gill. The facts are almost identical, substantially so in any event. I have some questions, and I want you to understand I am in no way suggesting that you personally have done anything wrong or whatever, but I want to understand a little bit about these cases here. First of all, Mr. Kulip S. Darwal and Mr. Rai were the counsel for these folks before the IJ and the BIA. Do you or your firm have any financial arrangements with either of those folks? No. Okay. As I mentioned, in these four cases, you've got situations where each of these people were members of the Mann Party. Each allegedly received several beatings by either the police or members of the Congress Party or both. The police looked for both the father and the son and threatened to beat them or did beat them, and they were threatened and beaten alongside a road by members of the Congress Party, and then each fled to the United States. The insistence of their families. Have you ever filed petitions for review filed before the IJ or BIA by Mr. Darwal or Mr. Rai that had substantially identical facts to those in the cases today except for these four cases? No idea, Your Honor. I'm sure I've represented people on appeal that had been represented by Rai or Darwal at some point, but, no, I have no relationship. I can say I represented Mr. Darwal when he was applying for asylum some 20-plus years ago. But other than that, no, I don't have any relationship. What concerns me, and I've just begun my search on this, but it appears to me that in the cases of Manns v. Sessions, Bazet v. Lynch, Singh v. Holder, a different Singh v. Holder, by Gora v. Holder and another Singh v. Holder in our court between 2017 and 2011 where the facts were substantially identical to the facts in the four cases before us, you were their counsel. Do you know whether either Mr. Darwal or Mr. Rai were counsel for the petitioners in any of those cases? No idea, Your Honor. Okay. And I ask you as an officer of the court that to your knowledge, are the allegations that were submitted to the IJ and the BIA and to our court in each of these four cases true and correct? I certainly have no reason to disbelieve them, Your Honor. I understand your point about the similarity. You know, all of them claim to be members of the same political party. The facts of their persecution do differ to some degree. But, yeah, they're all claiming to be active in the same way. One could infer from that that this is a pattern of persecution that's occurring in India, people who belong to this party, and it's a very small political party. And it's well documented that it's a persecuted political party. And I respect that. I really do. But what concerns me, like you've got these instances of a guy riding along on a motorcycle and people in the Congress are trying to beat him up, and it shows up in four or five cases. I mean, come on. It shows up in a lot more than that. Yeah. So we had a case a number of years ago involving, I'll call it an Armenia situation, where you had people that were taken out into a field and beaten up by a jeep, not by the jeep but where they were in the jeep. And it turned out it was a scam. Now, I'm not suggesting that that's what you've got here, but I am concerned about what appears to be, at the very least, a repetition of allegations that, in terms of probability, it's really improbable that all these people could have exactly the same thing happen to them. So I'm concerned. And, again, I don't know that I've even met these clients. I may have met them at an intake or something. But the point here is that – Could I observe two things? One is that we have had cases from China, for example, where there's a widespread practice, and a lot of those had similar facts. Number two, I don't think the persecution in these cases is exactly identical. I think that there are variances. And three, let me ask you, Mr. Joe, I believe in all these cases the IJ found them credible. Exactly, Your Honor. Based on their in-person testimony. That's correct. Obviously, Your Honor, in every one of these cases, credibility is always going to be the threshold question. And it may well be that there are people that are inventing this, claiming that they've been members of this party that aren't. So the threshold question is always credibility. It hasn't been raised by the government. No. In every one of these cases, the judge either found the person credible or assumed that they were credible. And I respect that. I respect what my colleagues are saying. I respect the fact that something could be similar. But, as you know, with respect to the Chinese case, there was a ring of lawyers in New York who were arrested and indicted for immigration fraud. In the Armenian case, they were arrested for fraud. So that's my only concern. Not you. I'm not suggesting anything whatsoever about you personally. The lawyers may be just as pure as the newly driven snow. But this doesn't smell good. It just doesn't smell good. It defies logic that you have so many cases where almost exactly the same types of abuse, like the one that sticks with me is the motorcycle. Driving along on the motorcycle, they stop him, and they beat him up, and they're members of the Congress party. Well, once, maybe twice, four or five times? I don't think so. I hope that's not going to taint your system. No, no, no, no. I'm trying to understand how that fits in the whole thing. You know, I'm going to judge each of these cases based upon the facts of the case. I'm going to judge it based upon the factual determination and the credibility determination by the IJ. But I wanted to find out, if we could, more about this. Apparently you don't know anything about it, so I rest my questions. But you can understand I'm concerned about this. I understand that, Your Honor. But, again, I hope that doesn't taint your view of these cases because in each and every one of these cases, these individuals have been deemed credible, their testimony has been accepted and given full weight. I'm going to treat them that way. So going back to the facts of this case, in our view, the Board committed three fundamental mistakes here in applying the presumption. First, it didn't presume that Mr. Singh would be subject to countrywide non-governmental persecution, even though it was accepted as true that he was attacked and beaten twice by members of the Congress Party. Second, in assessing governmental persecution, it focused exclusively on whether the Punjab police or the central government would pursue him to some other state and persecute him. It ignored completely the question of whether or not Mr. Singh, if he relocates and continues his activities as he indicated that he would, would suffer abuse at the hands of the state police in the area of relocation, just as he did at the hands of the state police in Punjab. But with respect, and we're talking about Mr. N. Singh at this point, right? Yes, exactly, Your Honor. So as I understand it, at the hearing, he testified he would continue advocating for the Mann Party wherever he lived. That's AR-126 and 154. But the BIA, when it considered that, it took that into account. And in a forward-looking way, saying that looking at what was likely to happen, they talked about that all that seemed to be happening to people who were high-profile militants outside of Punjab were the only ones that were likely to be persecuted. Why does that not satisfy the requirement to consider what was going to happen or potentially happen in the future? You're looking at the board's decision page four, Your Honor. If you look at that, see, again, this guy was persecuted by both police and Congress Party. Understood. The board's decision, it mentions the fact that he was persecuted by Congress Party. But in assessing countrywide persecution, it never comes up. The board's analysis is focused entirely, 100 percent, on governmental persecution. It didn't apply the presumption. The fundamental error here, Your Honor, is if you look at footnote one of the board's decision, it says here that the immigration judge did not make any conclusions about past persecution. And that's the original sin here, because if there has been past persecution, and if you accept these facts, it's true, there's no doubt he was persecuted in the past, you have to presume that he's at risk countrywide, both from the government and non-governmental actors, because of his political opinion. The board didn't do that here. Instead, if you look at footnote three, or footnote one, what it said was, because he fears the government, we're going to presume that he's in danger countrywide from the government. But that ignores one half of this guy's claim, the original claim. If the board had gone ahead and made a finding of past persecution, which is really the starting point, you know, after credibility in these cases, it would have had to presume that he's in danger countrywide, not just from the government, but from private actors as well. But even its analysis of governmental persecution was flawed, because, again, in assessing governmental persecution, it focused entirely on whether the Punjab police, his original persecutors, would track him down. It didn't analyze whether if he moves to some other state and he continues these same sorts of activities that got him into trouble, whether the state police in that area of relocation would harm him. I want to just note your overtime, because I partly brought you there. We're going to give you another two minutes on this end before we hear from the government. Can I just make one final point? Did he really raise the issue of police other than the Punjab police? Not originally, Your Honor. In the future? That's true. But then when we took over the case, we immediately filed a motion to reconsider. And in the motion to reconsider, we laid out what we thought to be the fundamental flaw here. We argued that Singh had credibly testified he's going to continue these same activities that led to his persecution. We argued that there has to be some showing that the police in whatever state he relocates to would treat him better. The board denied our motion to reconsider, but didn't even address our argument, that portion of our argument. And it's for that reason the case has to absolutely go back to the board. If you bring a motion to reconsider and you raise an issue for the first time that was not raised in the initial proceeding, can you bring something ab initio and still have it count, basically? Well, the board concluded that the immigration judge committed no legal error. That was its conclusion. We went back and said, well, Your Honor, you're wrong about that. We believe there was a legal error. Here's what it is. And the board didn't address the argument. But is it not true that the BIA doesn't have to, I think their language is it doesn't have to perform an exegesis of every argument that's made as long as it considers the thrust of what was said? In other words, can he be relocated reasonably within the country? They don't have to mention everything as long as it flows within the concept of what they talked about. It doesn't have to, like in the exercise of discretion, it doesn't have to mention every conceivable factor. But this is the principal reason that this guy would be afraid. All of his persecution occurred at the hands of state police. If he's going to relocate, of course, the obvious question is, would the state police in that new area treat him any better? The board never addressed that. Would it be your burden on your motion for reconsideration to provide evidence that private actors had threatened your client or indeed anybody else who had left the Punjab who was a member of the man party? No, not if the board did as we asked and ruled on the past persecution claim. By skirting the past persecution claim, the board made its analysis much more simple, because that way it was able to focus exclusively on governmental persecution. If the board had done as it's supposed to and addressed whether there was past persecution, a different presumption would have applied, and that presumption applies to both governmental and nongovernmental. By skirting the question of past persecution, the board avoided the appropriate presumption. That's its fundamental legal error. Okay. Why don't you have a seat? We'll give you a minute of rebuttal, but let's hear from the government, okay? Thank you, Your Honor. Good morning. Good morning, Your Honors. Good morning, students. May it please the Court, Alexander Lutz for the respondent. Your Honors, the government didn't err here by or the agency didn't err here by presuming that Mr. Singh had suffered past persecution. That presumption was to his benefit. That presumption, Mr. Singh's argument that the agency erred in applying that presumption really focuses instead on his argument that the agency failed to consider certain parts of his claim. In other words, from the government's perspective, certainly the record seems to reflect that the IJ and the BIA did credit Mr. N. Singh with having suffered past persecution, right? That's right, Your Honor. Which triggers the presumption. That's exactly right, Your Honor. We don't even get to relocation unless there's a finding of past persecution. Right. So the only distinction here is that the agency, instead of doing a full, is that the agency simply presumed that because they determined that if they presumed that, the relocation analysis would be dispositive. But where that gets Mr. Singh really is just into his claim that the agency erred by failing to consider, I think, what he says, nongovernmental harm. It ignored harm by the local police in other states. We'd respectfully suggest that the record just does not compel that conclusion. And I know the Court's already aware of this, but I'm going to remind it anyway, that the standard here requires the substantial evidence standard that's applicable here, at least with respect to the agency's initial decision on Mr. Singh's direct appeal, requires Mr. Singh now to identify evidence in the record that compels reversal of this relocation finding. And that's an uphill task for Mr. Singh here today. I mean, this record contains statements, quote, there is no mention of discrimination against Punjabis, including Sikhs, by police in India. I mean, that's at the 255 to 256 of the record. Kennedy, what about Mr. Job's private actor's concern? If I understood him correctly, he's saying, well, the police, that's all well and good, but, you know, you've got people within the Congress Party that used to control the government of India that are all over the place. And why doesn't Mr. Singh have a reasonable fear that some private actor will go after him? Well, Your Honor, the agency decisions that are on review here didn't discuss that at length because Mr. Singh didn't raise that before them. He did in the motion to reconsider. Your Honor, I think in the motion... And they don't mention that at all in their ruling. It does address the MD, their other case about the specificity. Right? Well, Your Honor, as Judge Smith said a moment ago, the agency doesn't have to write an exegesis on this subject. Yes, but when it's one of two arguments, they should at least acknowledge it, don't you think? Your Honor, I think they did fairly acknowledge it in their statement that Mr. Singh hadn't put forward any additional arguments in his motion to reconsider that met his burden to an error of fact or law in the agency's previous analysis. I think that's the sentence after the one about the specificity. In the next sentence, they say he hasn't presented any other argument that meets his burden here. And, Your Honor, it bears repeating that this case requires the court to consider two separate agency decisions, but those two decisions are in two different procedural postures. They have two different standards. And in each of them, there were certain issues that were exhausted and some issues that were unexhausted. So in the motion to reconsider, Mr. Singh's burden was to show that the agency had misapprehended something, that it had made an error of fact or law in its initial decision. And the arguments he made, if I recall correctly, were, number one, the argument about specificity based on the board's decision in MZMR, number two, that the agency had not considered whether Mr. Singh would face persecution from state police in other And the board correctly said, you know, they addressed, they just gave the MZMR argument a little bit more discussion, but they said none of these points shows that we erred in our previous decision. These aren't a basis for us to reconsider. So, Your Honor, I think the agency gave that argument all the treatment that was required. But, Your Honor, to return to my earlier point, Mr. Singh's argument before the board on his direct appeal here was that the Punjabi police would find him, was that they would find him through the tenant verification system. And, you know, before the agency, he said, I'm going to continue to spread the word of my party abroad. And the immigration judge specifically quoted that and said, you know, incidents of harm suffered by the petitioner or by the respondent, excuse me, at that point, and his continued involvement with the Mann party upon return to India will not make him a target for harm outside the Punjab. I mean, that's at page 81 of the record. And then the reason the board doesn't dig into this argument about other police in other States in the level of detail that Mr. Singh would now prefer is because on appeal to the board, he was the one shaping the issues for a decision, and his challenge. But in his invulsion for reconsideration, he was very specific, wasn't he? Well, that's true, Your Honor. But at that point, he was specific as to the issue of the police in other States. I think even at that point, he did not raise an argument that the Congress party nationwide would be a separate form of harm that would target Mr. Singh. But at that stage, again, we have a different procedural posture. So the question now isn't did the immigration judge err by failing to consider this. The issue is in the board's previous decision, was there an error of law or fact, or did it, you know, did it err by failing to consider this new argument that I'm raising for the first time? Now, I mean, I suppose it's a question of who raised or didn't raise the issue. But they kept focusing, I think that's true in all of his cases. It's on, well, the Punjabi police won't go after a low-level person, and therefore, we're not worried about tenant registration or any of that. But the issue is in terms of whether he could safely relocate, I guess is if he continues to do the same kind of thing. Get involved to the extent he can find other people or goes out, I guess, by himself with his own placard or whatever he would do and say, well, there should be a separate state, even though it's far away from the area where he had suffered past persecution, whether he would then, what is the likelihood that he would suffer persecution in the future? And it is the government's burden, at least if he raised it at all to address this, right? Your Honor, the government's burden was to demonstrate that there was an area where he could safely and reasonably relocate. And I think that does touch on the issue you're talking about. But now here, Mr. Singh's burden is to show that this record would compel reversal of the decision the agency rendered when it sifted through all the evidence and made a decision that Mr. Singh could safely and reasonably relocate. But doesn't the agency have to have at least addressed, or don't we have to have some reason to think that it actually thought about persecution by somebody other than the Punjab police? You know, Your Honor, I think that we do have that evidence in the record, and I think it's at pages 7681 and 126 a minute ago, like I mentioned, where Mr. Singh specifically testified, wherever I go, I'm going to spread the word of my party. The immigration judge quoted him on that and then said the instance of harm that he suffered and his continued involvement with the Man Party will not make him a target for harm outside the Punjab. And the evidence supports that finding, Your Honor. There is evidence in the record that shows Mr. Singh will be safe, even if he continues to practice his support for the Man Party. Okay. What is that evidence? Sure, Your Honor. Well, a minute ago I quoted pages 255 to 56. There is no mention of discrimination against Punjabis, including Sikhs by police elsewhere in India. Where the Library of Congress report from 2012 says at page 264, several experts have suggested that only those considered by police to be high-profile militants are at risk, even if they were to relocate. Simply holding pro-Khalistani views would not make an individual a high-profile suspect. Is this what that means? I suppose holding pro-Khalistani views doesn't mean acting out on them? What does it mean? Your Honor, I'm sorry to have cut you off. But I think in context, the report that quote comes from answers that question. That report is discussing how, you know, sort of the raison d'etre of the party that Mr. Singh belongs to is advocating for an independent Sikh state in the Punjab that would be called Khalistan. And the reports the DHS submitted talk historically about the roots of that conflict and about how it's treated now. And when they talk about holding pro-Khalistani views, they're contrasting that with the type of behavior that the police in other states, including the central police, are predominantly interested, which is essentially terrorism. There were a number of acts that could fairly be considered terrorism that were committed by Sikh separatists decades in the past. So I think that's what the report means when it says holding pro-Khalistani views. I don't think that means holding them quietly in your heart and never speaking them. I think that means holding these views and doing things with them that just don't rise to the level of terrorism, because that's what draws the eye of the Indian central police and the police in other states. This is where you take the position that the evidence that is produced by the Petitioner must compel a different result. That's right, Your Honor. The burden of proof before the agency was on the DHS to show that Mr. Singh could safely and reasonably relocate. And that answers the past persecution issue, right? If the agency successfully shows that he can relocate safely and reasonably, then that answers past persecution, right? I think it resolves the case, Your Honor. I think the structure of the regulation is if an applicant for asylum demonstrates that they're a refugee by virtue of having suffered past persecution, then they're presumed to face future persecution on the same protected ground unless the DHS meets its burden to do one of two things to rebut that presumption, one of which is showing the possibility of safe and reasonable relocation. That's what the agency did here. The burden was properly placed on them and properly discharged. And so now here, after the agency has sifted through all the evidence, the standard is substantial evidence. Does this record compel any reasonable fact finder to reverse and hold that he could not safely or reasonably relocate? And it seems like the real issue here is since they didn't expressly mention the possibility of private actors trying to persecute the petitioner, whether the agency met its burden with respect to that, those people. Is that a fair statement? I think that is Mr. Job's argument, Your Honor. Yes. Oh, that's his argument. I'm just asking your government's position. Our position is that the immigration judge stated that he or she, excuse me, I can't remember the gender of the immigration judge in this case, that the immigration judge had considered all evidence in the record and just mentioned that that seemed most dispositive. And then the reason the agency's decisions from that point forward don't discuss the possibility of persecution by private actors in other States in more detail is simply because that argument wasn't advanced as a basis for error in the earlier agency's decisions. The agency goes where the arguments lead them. They resolve the arguments that are placed before them. Let me ask my colleagues. Do either of my colleagues have additional questions for the government? I do not. Okay. Thank you very much for your argument. Thank you, Your Honor. So Mr. Job, we'll give you one more minute on this. You've got three more cases to continue the dialogue, but you have one more on this one. One more minute. Well, the government's entire argument hinges on its misapprehension of the Board's decision. The government keeps insisting that there was a finding of past persecution, but footnote one says exactly the opposite. Footnote one of the Board's decision says the immigration judge did not specifically consider whether the harm experienced by the respondent constitutes past persecution on account of a protected ground. However, as the respondent fears being harmed by agents of the Indian government, the immigration judge correctly allocated the burden of proof of establishing that he could safely and reasonably relocate. Well, wait a minute. That's a different presumption. Well, let me understand. You're saying that because of footnote one that past persecution was not established? I'm saying the Board never addressed it and neither did the immigration judge, nor did they assume it in this case. But wait a minute. The whole concept of relocation is a response to past persecution, is it not? No. There are two different presumptions set forth in the regulations. One that's based on past persecution, which is a much broader presumption, and another, even if you don't, even if you've never suffered past persecution but you fear the government, there's a presumption that arises that you're in danger countrywide at the hands of the government. Now, here, if you look at footnote one, the presumption that the Board is applying here is simply because he fears governmental persecution. Neither the immigration judge nor the Board ever actually ruled on past persecution. That's the heart of our motion to reconsider. Because if there was past persecution, a different presumption applies, it's much broader, and the government cannot refute that. And what is the presumption? Compare the two presumptions for me, then, the one of past persecution and the one that is applied in this case. A victim of past persecution is presumed to be at risk countrywide on the same statutory grounds. Right. Irrespective of whether it's government or private, it encompasses both. But somebody who simply fears the government. Private, but it's only private if they're in league with the government, right? No. That's part of this other presumption, this governmental presumption, also pertains to nongovernmental actors who are government-sponsored. But there's no finding here that these Congress Party actors were government-sponsored. So the presumption that was applied here, it's not the presumption that normally arises upon a showing of past persecution. The Board applied a separate presumption, and that's why, if you look at the Board's decision, they never even addressed the Congress Party. They only addressed the Punjab police. And if I could just make one more point, Your Honor. Let me just ask my colleagues how they want to handle this. We've got three more cases, similar issues. Should we go to other cases? Or do you want to hear the conclusion? I'm not sure I'm understanding your argument. Why don't you go ahead and finish your argument here on this one then. My final point, because I said the Board made three errors. My final point is that even if you accept their framework, that we only look at the Punjab police and the Central Reserve police, they misapprehended the record. And the government does this as well. In the government's brief, they cite the exact same provision. They cite page 248. It's a 2008 report from the United Kingdom that says there are no reports that members of either a Cali DAL or the SSF are specifically targeted or discriminated against as a result of their membership. This is exactly what the government was referring to when it stood up before you. Let's just say, arguendo, that you're correct. You would want us to send what back to the BIA with what direction? The whole case has to go back. They have to first assess whether there was past persecution and whether that presumption applies. Then, if that presumption applies, they have to assess whether this individual would be safer at the hands of both state government officials, which they've never considered, and private actors in the area of relocation. Can you give us a case that involves the private actors aspect of this? Not off the top of my head. I've never heard of that split before. I always thought it was private actors if the police would not intervene to protect. Well, that would constitute persecution if the government is unable or unwilling to protect. Yes. But the presumption that applies, there are two different presumptions that apply to private actors. One is if they're government-sponsored. That doesn't require any past persecution. It's set forth in the regs. The other is if you're a victim of past persecution. That's also set forth in the regs. But the final point that I wanted to make is that the government's entire argument here with regard to this report, they're looking at the wrong political party. This section that they're referring to that the immigration judge relied upon and the government relies upon in its briefing is talking about a Kalidol bottle. It's a separate political party. We know that because the section that the government is referring to says, Demands for an independent Sikh state were dropped by the party following the Punjab Peace Accord of 1985. That's the mainstream Kalidol party. That's not a Kalidolmand, which is a radical separatist organization. But it doesn't have to be. All they were saying is the Congress party is not in charge anymore. That's a different issue. No. They're arguing based on this, Your Honor, and the immigration judge cited this expressly in his decision, that members of a Kalidolmand are not discriminated against. But the section that he's quoting in his decision and the section the government's quoting in its brief, it's actually referring to a different political party. They're both named a Kalidolmand, but only one supports the movement for an independent Sikh state. Okay. And that's a Kalidolmand. I think we have your argument on this one. So the case just argued is submitted.
judges: Fisher, M. Smith, Bucklo